APPEAL No. 17-10328-K

----------------------------------

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------

WARREN MUMPOWER

v.

UNITED STATES OF AMERICA

----------------------------------

MEMORANDUM IN SUPPORT OF MOTION

FOR CERTIFICATE OF APPEALABILITY

----------------------------------

Warren Mumpower, pro se

05984-018  USP-Tucson

P.O. Box 24550

Tucson, AZ 85734

U.S. COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT


CERTIFICATE OF INERESTED PERSONS

Warren Mumpower v. United States                    Appeal No. 17-10328-K


Berger, Michael, Co-defendant

Collier, Lacey A., Senior U.S. District Judge, N.D. Fla.

Cordero, Barbara, Special Agent, FBI

Couch, Clinton A., Attorney (CJA) N.D. Fla.

Davies, Robert G., AUSA, N.D. Fla.

Fay,      Circuit Judge, 11th Cir.

Freeman, James, Co-defendant

Freitas, Lisamarie, Attorney (DOJ)

Godfrey, Robert, Federal Defender, M.D. Fla.

Goldberg, David L., AUSA, N.D. Fla.

Lang, E. Brian, Trial Attorney, (CJA) N.D. Fla.

Printy, Gary L., Appellate Attorney, (CJA) N.D. Fla.

Smith, Cory J., AUSA, N.D. Fla.

Sprowls, Paul A., AUSA, N.D. Fla.

Stinson, Robert D., Attorney (Retained) N.D. Fla.

Timothy, Elizabeth M., Magistrate Judge, N.D. Fla.

Vinson, Roger, Senior District Judge, N.D. Fla.

TABLE OF CONTENTS

Certificate Of Interested Persons........................C-1

Table Of Contents.........................................i

Table Of Citations.......................................ii

Memorandum In Support Of Motion

For Certificate Of Appealability..........................1

Background................................................2

Issues Before The Court...................................3

    1.) Faulty Indictment.................................4

    2.) Insufficiency Of The Evidence.....................5

        A. Advertisement And Transportation...............6

        B. Receipt.......................................12

        C. Exchange For A thing Of Value.................12

        D. Child Exploitation Enterprise.................14

        E. Venue.........................................19

        F. Ineffective Assistance Of Counsel.............21

            1. Trial Counsel..............................21

            2. Appellate Counsel..........................23

    3.) Appellate Court Errors............................24

        A. Constructive Amendment Of Indictment..........24

        B. Changing The Theory Of Prosecution............25

    4.) Failure Of The District Court to Address

        All Constitutional Claims.........................26

Conclusion...............................................28

Certificates Of Compliance And Service...................30

TABLE OF CITATIONS

Braverman v. United States

328 US 503 (1989)........................................15

Cantor v. Mankiewicz

(1960, Sup) 203 NYS2d 626, 125 USPQ 598....................23

Chiarella v. United States

445 US 222 (1980)........................................26

Cole v. Arkansas

222 US 196 (1948)........................................25

Dunn v. United States

422 US 100 (1979)........................................25

Estelle v. Gamble

429 US 97 (1976).........................................1

Ex Parte Bain

127 US 1 (1887)..........................................25

Flaoona v. Hustler Mag. Inc.

607 F3. Supp. 1341 (N.D. Tex. 1985)........................7

Haines v. Kerner

404 US 579 (1972)........................................1

In re Steven A. Mundie, Attorney

453 Fed. Appx. 9 (2nd Cir. 2011)..........................23

In re Winship

397 US 358 (1970)...............................6, 10, 12

Kimmelman v. Morrison

477 US 365 (1986)........................................2

Kotteakos v. United States

328 US 750 (1946)....................................21, 28

Lockhart v. Fretwell
506 US 364 (1993).....................................21, 28

McCormick v. United States
500 US 257 (1991).....................................25, 26

Russell v United States
369 US 749 (1972)................4, 5, 11, 12, 14, 16, 26, 27

Rutledge v. United States
577 US 292 (1996).....................................14, 18

Stirone v. United States
361 US 212 (1960).........................................24

Tannenbaum v. United States
148 F3d 1262 (11th Cir. 1998)...............................2

Taco Cabana Int'l v. Two Pesos Inc.
932 F2d 1113 (5th Cir. 1991)...............................23

United States v. Bobo
344 F3d 1076 (11th Cir. 2003)..............................27

United States v. Broce
488 US 503 (1989).........................................15

United States v. Cabrales
109 F3d 471 (8th Cir. 1997)................................20

United States v. Cabrales
524 US 1 (1998)...........................................20

United States v. Cronic
466 US 648 (1984)......................................8, 21

United States v. Daniels
653 F3d399 (6th Cir. 2011)................................18

United States v. Dickson
403 Fed. Appx. 931 (5th Cir. 2010)..........................2

United States v. Harris
344 F3d 803 (8th Cir. 2003)...............................11

United States v. Larkin
629 F3d 177 (3rd Cir. 2010)................................7

United States v. Rosen
764 F2d 763 (11th Cir. 1985)..............................15

United States v. Raffone
693 F2d 1343 (11th Cir. 1982).............................27

United States v. Schlei
122 F3d 944 (11th Cir. 1997)..............................19

United States v. Spriggs
666 F3d 1284 (11th Cir. 2012..............................13

United States v. Starr
533 F3d 985 (8th Cir. 2008)...............................11

United States v. Toler
144 F3d 1423 (11th Cir 2008)..............................16

United States v. Villard
885 F2d 177 (3rd Cir. 1999)................................7

United States v. Weigand
812 F2d 1239 (9th Cir. 19  )...............................7

United States v. Whirlwind Soldier
499 F3d 862 (8th Cir. 2007)...............................11

Other Citations

3rd Circuit Pattern Jury Instruction 6.8.371H..............16

11th Circuit Pattern Jury Instruction 13.2.................16

11th Circuit Pattern Jury Instruction 13.3.................16

11th Circuit Pattern Jury Instruction 13.5.................19

18 USC 3237(a).............................................19

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| WARREN MUMPOWER | Appeal No. |
| v. | 17-10328-K |
| UNITED STATES OF AMERICA | |

MEMORANDUM IN SUPPORT OF MOTION

FOR CERTIFICATE OF APPEALABILITY

Defendant Warren Mumpower, pro se, hereby appeals to the Eleventh Circuit Court of Appeals the District Court's denial of his § 2255 Motion To Vacate, Set Aside or Correct A Sentence and their denial of a Certificate of Appealability (COA) on this matter. Mumpower requests that the Eleventh Circuit Court of Appeals issue a COA on the issues discussed infra or in the alternative vacate the District Court's decision and remand to the court below for discovery and an evidentiary hearing.

This defendant asks this court to accept these pleadings as presented. "A pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v Gamble, 429 US 97, 106; 97 S.Ct. 285 (1976), quoting Haines v Kerner, 404 US 579, 92 S.Ct. 592 (1972). Pro se "[f]ederal pleadings are construed liberally according to...substance rather

-1-

than...form or label." <u>United States v Dickson</u>, 403 Fed Appx.
931 (5th Cir. 2010). See also <u>Tannenbaum v United States</u>, 148
F3d 1262, 1263 (11th Cir. 1998).

## BACKGROUND

Defendant Mumpower was arrested in Spokane, Wa., on
February 29, 2008, on various child pornography charges and
was extradited to Pensacola Fl., and convicted in a trial by
jury in the Northern District of Florida, Pensacola Division
on January 14, 2009. Mumpower appealed the convictions and
sentence to the Eleventh Circuit. A decision was handed down
on February 6, 2012. Two counts (Counts 2 and 40) were
vacated. Certiorari was denied by the Supreme Court on
October 29, 2012. Mumpower filed a 28 USC § 2255 Motion To
Vacate, Set Aside Or Correct A sentence (Doc 1040). The
government filed its response on February 14, 2014 (Doc 1085).
Mumpower filed a reply (ECF 1116). On October 10, 2016, the
Magistrate issued a Report And Recommendation (Doc 1208)
denying the motion and issuance of a COA. No evidentiary
hearing was held although one was requested both in Mumpower's
memorandum (page 68) and his reply (page 53). Various facts
remain in dispute. Mumpower filed his objections to the R&R
(Doc 1212). At that time he requested a COA on several
issues. Some of those issues are repeated here. After
review, the District Judge issued a final order on November
16, 2016 (Doc 1214) denying the motion and the issuance of a
COA.

-2-

ISSUES BEFORE THE COURT

1.) Is the Indictment faulty for failing to state with particularity the offense conduct of Counts 12, 22, and 35, violating defendant's due process rights, and

A. Is trial counsel, E. Brian Lang, constitutionally ineffective for failure to address the faulty indictment either in a pre-trial motion to dismiss the indictment for failure to state a claim or in the alternative file a motion to dismiss after the government rested their case, and/or

B. Is appellate counsel, Gary l, Printy, constitutionally ineffective for failure to argue the faulty indictment on appeal?

2.) Is the evidence insufficient to support a conviction for Counts 1, 12, 22, and 35, violating due process, confrontation clause, free speech rights, and actual innocence under the Constitution, and

A. Is trial counsel constitutionally ineffective for failure to build an adequate record of the evidence by not presenting a defense, and/or

B. Is appellate counsel constitutionally ineffective for failure to argue the insufficiency of the evidence on appeal?

3.) Did the Appellate Court violate defendant's constitutional due process rights when it constructively

amended the indictment by adding conspiracy as a third predicate act to Count 1, and changing the government's theory of prosecution in order to sustain a conviction on Count 1, and was appellate counsel constitutionally ineffective for failure to address these errors on a motion for rehearing or rehearing en banc?

4.) Did the District Court err when it failed to properly address each of this defendant's Constitutional claims, and did the Court err when it denied Mumpower the opportunity to further build the record by holding an evidentiary hearing?

## DISCUSSION

### 1.) Faulty Indictment

The Superseding Indictment for Mumpower is lacking under the Sixth Amendment to the Constitution as it fails to state with particularity the offense conduct for Counts 12, 22, and 35 (and by reference, Count 1). Russell v. United States, 369 US 749, 765 (1962). A faulty indictment creates issues as to whether or not the jury was unanimous as to which crime they convicted the defendant of, and thus leaves this defendant susceptible to double jeopardy, a violation of the Fifth Amendment to the Constitution. A proper indictment should include sufficient details such as including the date of the alleged substantive count AND the name of the file allegedly shared to protect from double jeopardy.

-4-

The Court below was factually and legally wrong in their R&R (Doc 1208, pgs 9-10) and failed to respond as to why Russell does not apply. Mumpower does not disagree with the District Court's denial of a Bill of Particulars nor is this defendant relitigating a settled issue. Trial counsel erred when asking for a Bill of Particulars. "[I]t is a settled rule that a Bill of Particulars CANNOT save an invalid indictment." Russell, Id. at 770 (emphasis added). Thus a reasonably competent attorney would have filed a motion to dismiss the indictment for failure to state a claim based on the particularity required by the Supreme Court's ruling in Russell which is founded upon the Fifth and Sixth Amendments to the Constitution. By their denial of a Bill of Particulars, the District Court acknowledged the trial attorney's constitutional ineffectiveness under the Sixth Amendment in pursuing the incorrect path to correct a major constitutional error. There would be less confusion as to what exactly this defendant was charged with. Mumpower would have been better prepared at trial and on appeal.

Appellate counsel is also constitutionally ineffective under the Sixth Amendment for his egregious criminal and unethical conduct when he plagiarized co-counsel's brief when he could have adopted those few issues that had a good chance of success and write his own brief on the issues Mumpower requested. His conduct was deliberate, malicious and denied Mumpower his due process and a fair hearing at the appellate level.

2.) INSUFFICIENCY OF THE EVIDENCE.

-5-

Mumpower disagrees with the Magistrate's R&R as the report is factually and legally incorrect as to the insufficiency of the evidence and fails to address all the constitutional claims. Mumpower discussed in his memorandum in great detail, the insufficiency of the evidence. Of the four advertisements and transportations presented (WM-1, WM-5, WM-11A and WM-12), WM-1 (Doc. 723, p. 842, a post by Waffles - images not published) was not intended to be for a conviction as admitted to by the government in its response and so noted by the Magistrate, infra. See Government's Appellate brief, pg. 18.

A. Advertisement and Transportation

WM-11A is a set of pictures called Rom(c). (Memorandum pg. 32). Simply stated, the only necessary error that needs to be mentioned, and it is constitutionally fatal due process, is the government did not publish the images for this post to the jury for them to determine whether they are child pornography or legally protected free speech. Mumpower believes they are legal. The text post for WM-11A is a Doc. 723, pg. 860, but nowhere can one find within Doc. 723 where the images are published to the jury (See Doc. 723 pgs. 839-930). Failure to prove all the elements (By not publishing the images) violates Mumpower's due process rights under the Fifth Amendment as well as his Sixth Amendment confrontation rights. "[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of EVERY FACT necessary to constitute the crime with which he is charged." In re Winship,

-6-

397 US 358, 364 (1970)(emphasis added).

As the set is legal, this defendant's free speech right under the First Amendment is also violated. "Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo. As the Ninth Circuit stated, 'Private fantasies are not within the statute's ambit.' [United States v. Wiegand,] 812 F2d [1239,] 1245. When a picture does not constitute child pornography, even though it displays nudity, it does not become child pornography because it is placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it. Faloona v. Hustler Magazine, Inc., 607 F. Supp. 1341[, at FN 4](N.D.Tex. 1985)(nude pictures of children did not constitute child pornography when published in "legitimate" Sex Atlas or in "raunchy" Hustler magazine, because they did not depict children engaged in sexual conduct). [United States v.] Villard, 885 F2d [117,] at 125 [(3rd Cir. 1999)]." United States v. Larkin, 629 F3d 177, 184 (3rd Cir 2010). "We must ... look at the photograph, rather than the viewer. If we were to conclude that the photographs were lascivious merely because [the user] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand - a legal analysis of the sufficiency of the evidence of lasciviousness." Villard, Id. The jury cannot determine if the images are child pornography if they have not seen the pictures. Thus we have a fatal constitutional violation.

WM-12 (Doc 723, pgs. 866-868) is an actual innocence claim. The post is discussed in detail within Mumpower's memorandum (pgs. 22-28)(Discussion of Special Agent Cordero's

perjury continues to pg. 31). See also Mumpower's Reply brief
pgs. 31-32. The government failed to provide any
administrative subpoenas for the Usenetguide account or whose
computer the text post appears to come from, violating
Mumpower's right to confront the evidence which violates
Mumpower's due process and confrontation rights. The
government relies only on the nic (Garfield) which is USER
DEFINED and can be changed at will (Doc. 723, pg. 875, L 19).
Mumpower provided Joint Exhibit WM-1, a confession by Box of
Rocks stating that it was he (aka Cartman), not the real
Garfield that made the post. Joint Exhibit WM-1 is evidence
that the government provided to the defendant, not something
he dug up elsewhere or concocted himself.

 Trial counsel screwed up royally with his cross-
examination, destroying any credibility this defendant could
have gained with the jury as to his innocence (Doc. 723, pg.
876. See also the government's closeing argument (Doc. 760,
pg 96, L9-24). This isn't a smoke screen. It's a
demonstration of Lang's failure to prepare for trial. He
failed to make use of his expert witness and therefore had not
a clue what he was doing. Thank you government for proving my
point, Lang is constitutionally incompetent. This is a comple-
te breakdown of the adversarial process during the trial
phase. United States v. Chronic, 466 US 648, 657-658. The
whole line of argument presented in Mumpower's Memorandum
should have been presented by this defendant's trial counsel
on defense but he chose instead to abandon his client turning
his representation into a sham. Thus he is constitutionally
ineffective under the Sixth Amendment. See Chronic, Id. at

-8-

654.

The last advertisement/transportation is WM-5. It has its own issues. See Defendant's Memorandum, pgs. 33-35. Several important issues are raised here.

First, there was an administrative subpoena shown to the jury for Giganews but none for Mumpower's Internet Service Provider (ISP). Unless both administrative subpoenas are provided, it is only speculation as to who actually made the post. On cross-examination Federal Defender Thomas Keith, representing James Freeman in this matter, asked Special Agent Wilder of the Innocent Images Task Force, "And unless you actually trace the particular header, if you can, you don't know for sure who is sending that message, right?" Wilder replied, "That's correct." Keith continues, "I mean, that's the way to actually verify whose account was being used, things of that nature?" And Wilder replies, "Yes, Sir." (Doc 721, pg. 295, L 9-14).

The second problem with WM-5 is the fact that the government stated that they found keys missing (Doc 723, pg 929, L 13-16). Importantly, the government did not find the necessary key to post WM-5, (the "E" keys - binary or chat). The last key for the Achilles group possessed by Mumpower, according to government evidence was no longer used after January 21, 2007 - three days before the post was made using the new "E" key (Memorandum, pg. 34). The government did not find the "7" keys (chat or binary), the active keys at the time of Mumpower's arrest (Doc 720, pg. 96, L 1-5)(See also defendant's Reply Brief Exhibit RX-1, pgs. 6-7), nor did they find any keys used by the group between the "E" keys and the

-9-

"7" keys.

Throughout the trial the government stressed the importance of the keys, summing up their theory of prosecution thus, "And when you got in, you were given the keys to the kingdom...These were invaluable." (Doc 760, pg. 5, L 24-25). "In fact, they were the keys to the Kingdom.  WITHOUT THEM, YOU COULD NOT ACCESS THE TREASURE, the text posts, the vile posts with the ever-essential instructions.  Without those instructions, there was no way to access the images of child pornography." (Doc 760, pg. 6, L 8-12).  Without the keys, it would be impossible to encrypt the messages and post them to the group.

The third issue with WM-5 involves Trojans found on Mumpower's computer which would allow someone to take over his computer unknown to Mumpower (Memorandum pgs. 34-35)(Doc 723, pg. 916, L 19 to 917, L 11).  The discussion there is clear. We have a post where someone used Mumpower's Giganews account to post WM-5 but don't know if it went through this defendant's ISP or not (ie., from Mumpower's computer).  We know the government did not find the "E" keys, the keys necessary to post WM-5.  Without the keys and the administrative subpoenas for Mumpower's ISP, as well as the testified Trojans found, to conclude the post was by Mumpower is mere speculation based on constitutionally insufficient evidence.  See in re Winship, at 364 (supra).  Identity theft did occur by the same person that posted WM-12, stealing Berger's Newscene account password and using his account to post which resulted in Berger being erroneously arrested and accused of being Box of Rocks.  This brings us to the basic

-10-

fact that the government did not meet its constitutional obligation to prove beyond a reasonable doubt that Mumpower posted WM-5.

WM-11A and WM-12 were not considered by the Grand Jury as advertisements or transportation. WM-11A was presented as an overt act in furthering of the conspiracy, though there was no finding of guilt by the jury on the Rom(c) set, WM-11A.

With trial counsel's refusal to defend Mumpower, the evidence showing that Box of Rocks hacked and used Berger's account did not get before the jury, thus the evidence to show that others did, in fact use accounts not their own.

Briefly this defendant will mention transportation. The Grand Jury was shown Cam11.jpg as the substantive act for transportation and none other (Doc 198-1). Cam11.jpg was never shown at trial. Therefore we have a material variance. "A variance arises when the evidence presented prove facts that are 'materially different' from those [alleged] in the indictment." United States v. Starr, 533 F3d 985, 996-979 (8th Cir. 2008), quoting United States v. Whirlwind Soldier, 499 F3d 862, 870 (8th Cir. 2007); United States v. Harris, 344 F3d 803, 805 (8th Cir. 2003). The Grand Jury saw Cam11.jpg as the transportation, not WM-5, WM-11A or WM-12. This violates Mumpower's due process rights. The concept of samples doesn't work. The defendant must be tried on what the Grand Jury saw, nothing else. Otherwise, this "defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the Grand Jury which indicted him." Russell, at 770 (supra). Thus Mumpower's conviction for transportation (as well as advertisement of WM-11A and WM-12) is faulty and

-11-

must be vacated for the variance as well as the insufficiency of the evidence discussed (supra) with regards to the three advertisements.

## B. Receipt

WM-15A & B, as well as WM-16A & B, comprise the two receipts. For out purposes, only the "B" post concerns us, the "A" being the poster's notice. WM-15B fails because it was not presented to the Grand Jury. In re Winship at 364 (supra), Russell at 770 (supra). WM-15B also fails because it lacks proof beyond reasonable doubt that the "Garfield" of this post was actually Mumpower as the government has not provide4d any administrative subpoenas showing Garfield was Mumpower. See Wilder's testimony (supra). Thus WM-15B fails due to the failure to prove beyond a reasonable doubt that Mumpower actually was Garfield and received the images.

WM-16B was shown to the Grand Jury but otherwise fails for reasons discussed with WM-5: No administrative subpoena was shown for Mumpower's ISP and the government relies on the administrative subpoena presented for WM-5 to support this post. Without the subpoena for both NSP and ISP for each post, the Jury can only speculate as to who posted the message or digital media. WM-16B also fails as did WM-5 for lack of the necessary keys "to the Kingdom." See also Mumpower's Memorandum, pgs. 43-45.

## C. Exchange For A Thing Of Value

Usenet exists "to promote free access to information. Generally [it does] not operate as a forum for bartering."

-12-

United States v. Spriggs, 666 F3d 1284, 1288, (11th Cir. 2012.
Within the Achilles group trading/exchange was not a
requirement of membership or participation.  Notably co-
defendant Ronald White never transported (ie., distributed)
yet was able to receive without penalty.  Also, T.F.O.
Constable Power was able to download (receive) images and
videos for the entire 18 month investigation, never posting
media, sharing, trading or exchanging.  Had the group been a
trading or exchange group, his failure to upload would have
uncovered his ruse and the government's investigation would
have failed. (Doc 720, pg. 101, L 11-17)(doc 721, pg. 188, L
20-25).  As we cannot call the Achilles group a
trading/exchange group, "the expectation of receiving a thing
of value mist be understood in the context of a 'transaction'
conducted for 'valuable consideration.' ...Without evidence
that [Mumpower] and another user conditioned their decisions
to share their illicit image collections on a return promise
to share files, we cannot conclude there was a transaction
under which [Mumpower] expected to receive more pornography."
Spriggs, Id. at 1288.  There is no evidence any binary post by
Mumpower was conditioned on exchange.  One note needs to be
made with reference to the WM-5 post.  Within the post it
makes a "Trade Only" remark.  This does not refer to the
receiver of WM-5 but only to anyone that the receiver may in
the future share the video with.  WM-12 has a segment within
the body of the3 text that clarifies the definition of "Trade
Only."  This is the definition understood by group members.
the part in parenthesis is Box of Rocks' personal view.  The
Amended Judgement (Doc 793, pg. 1) states that Mumpower was

-13-

convicted of advertising the exchange of child pornography
under 18 USC § 2251(d)(1) and (2). There is no finding by the
jury as to the exchange element of Count 12, the
advertisement. Count 12, advertisement, must be vacated and
dismissed for failure to prove all the elements of the crime,
thus violating Mumpower's due process rights. Note: this also
affects sentencing. As it is a clarification, and not a
change in statute, the change in enhancement is retroactive.
The enhancement for exchange must be dropped.

### D. Child Exploitation Enterprise

As the conspiracy was folded into the CEE, conspiracy
will be discussed as an element of the enterprise.

The Magistrate, in her R&R states that the conspiracy
is moot (Doc 1208, pg. 12). Mumpower disagrees. Although Cou-
nt 2 has been vacated, both the § 371 conspiracy and the
supposed substantive conspiracies were folded into Count 1.
Thus it is ripe for discussion both for its effect on the CEE,
as well as it could, in the future, be reinstated. Rutledge v.
United States, 577 US 292, 306 (1996). Did the Government
charge and prove one § 371 general conspiracy against the laws
of the United States, multiple separate and independent
substantive conspiracies, or both? Mumpower believes Count 2
can only stand as a single § 371 conspiracy since the objects
of the conspiracy are general in nature and against the laws
of the United States, not multiple specific conspiracies to
commit specific crimes (See Russell, supra at 765) which is
required for a predicate act in a CEE. Count 2 was "[a]
single agreement to commit several crimes which constitutes

-14-

one conspiracy." United States v. Broce, 488 US 503, 507
(1989). "Whether one or multiple conspiracies are proven
depends on whether the evidence demonstrates a 'single
enterprise.'" United States v. Rosen, 764 F2d 763, 765 (11th
Cir. 1985) quoting Kotteakos v. United States, 328 US 750, 769
(1946). "Whether the object of a single agreement is to commi-
t one or many crimes, it is in either case THAT AGREEMENT
which constitutes the conspiracy which the statute punishes.
The one agreement cannot be taken to be several agreements and
hence several conspiracies because it envisages the violation
of several statutes rather than one. Braverman v. United
States, 317 US 49, 53 (1942)(emphasis added).

If, in fact, a single § 371 conspiracy does exist, it
occurred with the acceptance of membership to the group, one
single agreement occurring once with one single objective
which "was to ... amass as much child pornography as they
could" (opening statement, Doc. (unknown) pg. 3, L 20-22),
memorialized in the group's FAQ (Government Exhibit 10 and Doc
720, pgs. 87-92) and as charged in the indictment. There is
absolutely no proof that Mumpower engaged in any independent,
separate substantive conspiracies. The named acts in the
indictment's charge which are different from the jury verdict
form, are part of the whole, and indivisible from the
scheme/objectives of Count 2's general, § 371 conspiracy. If
one of the enumerated objects, as defined in the indictment
fails, (or for that matter the enumerated conspiracies of the
jury form), the whole scheme falls apart. They are
interdependent which proves "that the indicted [§ 371]
conspiracy was a single unified conspiracy as opposed to a

-15-

series of smaller, uncoordinated conspiracies." <u>United States</u>
<u>v. Toler</u>, 144 F3d 1423, 1426 (11th Cir. 2008). "Multiple
conspiracies are separate agreements operating independently
of each other. However, a finding of a master conspiracy that
includes other sub-schemes does not constitute a finding of
multiple unrelated conspiracies." <u>3rd Cir. Pattern Jury</u>
<u>Instruction 6.18.371H</u>. The indictment charged only one
conspiracy and the objects listed are substantive. But after
both the government and the defense rested, the jury verdict
form was changed to show the objects as conspiracies.
Mumpower contends that the alleged conspiracies on the verdict
form are not substantive in nature as they lack the
particularity required by <u>Russell</u>, (<u>supra</u>) at 765, and the
particularity required to be folded into the CEE as predicate
acts.

  Had the court denied co-defendant's counsel, Mr. Oram,
his request for instruction 13.3 and used the proper
instruction 13.2, multiple objects, the instruction would have
matched the indictment (Doc 724, p. 1166). Trial counsel was
constitutionally ineffective. He should have objected and
requested the proper 13.2 instruction (multiple objects) as
the indictment calls for, and what the Grand Jury indicted on.
Because of his error, Mumpower was convicted of Count 1 in
error due to non-existent substantive conspiracies being
folded into the CEE. Because Mumpower's due process rights as
well as his right to be informed of the nature and cause of
the accusation, <u>Russell</u>, <u>supra</u> at 765, violated his
constitutional rights, and his trial counsel was
constitutionally ineffective, the conspiracy portion of the

-16-

CEE should be vacated.

The government, as well as the Magistrate, continually reference the "Achilles" newsgroup as " the enterprise." The group itself is not a CEE, nor did anyone have to advertise, transport, receive or possess child pornography. One could actively participate without ever committing a crime. Though Mumpower never took the test, from group discussion Mumpower believes the posting to the test did not require posting child pornography. Legal child modelling, photo art and nudist posts were also accepted.

The government and district court are incorrect, as was the government's theory of prosecution, (that only 3 predicate acts among all the members of the group were needed. Doc 760, pg. 99, L. 19-25). The government's theory was debunked by the appellate court when they said 3 substantive incidents per individual was required. In effect there were as many enterprises as people convicted. Therefore Mumpower's alleged enterprise must stand alone with the 3 or more predicate incidents, two or more victims and 3 or more other persons acting in concert. Mumpower also argues that when Congress stated in the CEE statute, "a series of felony violations constituting three or more separate incidents," they did not mean "instances" which has quite a different meaning. the Career Criminal Enterprise only requires a continuing series of felony violations, ie., a series of instances. "Incidents" in the distribution of child pornography means each TRANSACTION which may possibly include multiple felony violations within each single incident. Otherwise, as an example, the advertisement, transportation

-17-

and conspiracy of WM-12 could constitute the required "three or more separate incidents" and this is not the intent of Congress. WM-12 is only one incident.

Because the Child Exploitation Enterprise (18 USC § 2252A(g) requires the commission of "three or more separate incidents," the CEE fails with respect to Mumpower as he is actually Innocent of WM-12 and factually innocent of WM-11A. (See discussion on insufficiency of the evidence, supra). This leaves only one possible qualifying incident, WM-5, which Mumpower believes the evidence was constitutionally insufficient to convict. Mumpower believes the government did not prove three persons acted in concert with him. Nobody acted in concert with Mumpower in the commission of any possible qualifying substantive count the government believes Mumpower committed. While this defendant agrees that the § 371 conspiracy was properly folded into the CEE as to the agreement portion of the "in concert" element, there is more to the "in concert" as "it has generally connoted cooperative action AND agreement... "Rutledge v. United States, 517 US 292, 299 N. 10 (1996)(emphasis added). There is no evidence that shows anyone took any cooperative action that furthered the advertisement and transportation of WM-5, WM-11A or Wm-12. For that matter, no evidence was shown that anybody received any of the videos or images of the three alleged qualifying posts, read any of the messages or specifically conspired with this defendant as to the substantive conspiracies.

The Magistrate failed to do an analysis of who acted in concert with Mumpower to commit the three predicate offenses as was don in United States v. Daniels, 653 F3d 399,

412-414 (6th Cir. 2011).

Because Mumpower was erroneously convicted of the CEE, he holds that he has been egregiously harmed due to his loss of liberty in violation of the Due Process Clause.

### E. Venue

Venue was never proven. Nor was a jury instruction asked for. Six of seven defendants on trial were there on extradition. Mumpower believes the Magistrate is legally and factually incorrect in her assessment of venue. Doc. 1208, pg. 10-12. This defendant does not question venue for the conspiracy portion of the "in concert" element of Count 1, only 12, 22 and 35. Thus the Magistrate's argument for the remainder of pg. 10 is useless boilerplate.

Next, the Magistrate claims that a co-conspirator is vicariously responsible for the acts of any co-conspirator - except she forgets the Eleventh Circuit requires a Pinkerton Jury Instruction (13.5), but none was given. Then she claims aiding and abetting qualifies. While a jury instruction was given, the jury did not return a finding of guilt on aiding and abetting for anyone.

Finally, citing 18 USC § 3237(a), she states, "offenses begun in one district and completed in another ... may be prosecuted in any district in which such offense was begun, continued, or completed." There was no evidence given at trial that any substantive offense involving Counts 12, 22 or 35 begun, continued or was completed within the Northern District of Florida. In United States v. Schlei, 122 F3d 944, 974-75, and 979 (11th Cir. 1997), Schlei was convicted in the

-19-

Middle District of Florida for conspiracy (974-75), but the
Olson transaction took place in North Dakota, thus lacked
venue (979). In United States v. Cabrales, 109 F3d 471, 472
(8th Cir. 1997), affirmed at 524 US 1 (1998), the conspiracy
took place in Missouri yet the money laundering of the
proceeds of the conspiracy took place in Florida. venue was
lacking. Again there was no evidence presented at trial that
any substantive post by Mumpower was begun, passed through or
ended in Florida. The sentence referencing WM-29D and WM-29E
is nothing more than an unnecessary distraction. WM-29D is a
copy of a post between Mystical and Umami discussing the
posting of what Mumpower believes to be LEGAL content. It
does not involve this defendant. WM-29E is a rather old nic
list from March 2006 and highly inaccurate. After all it says
"Lizzard" is "Fruit Cake" yet WM-1 from the same food group
claims "Lizzard" is Waffles. The Magistrate has done nothing
more than cite useless, inapplicable boilerplate without
addressing the constitutional Sixth Amendment issues involved.
 Mumpower thus remains steadfast that venue for Counts 12, 22
and 35 are lacking.

        Trial counsel was constitutionally ineffective for
failure to request a venue instruction for file a motion to
acquit on Counts 12, 22 and 35 for failure to prove venue in
the Norther District of Florida.

        Appellate counsel also failed to argue venue and is
constitutionally ineffective.

        Mumpower was falsely convicted in the Northern
District of Florida and was harmed due to loss of liberty and
property (fine and assessment).

F. Ineffective Assistance Of Counsel

1. Trial counsel made 6 critical errors that proved fatal to Mumpower['s defense.

First, he abandoned his client when he refused to present a defense. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Lockhart v. Fretwell, 506 US 364, 369 (1993), quoting Kimmelman v. Morrison, 477 US 365, 374 (1986). Mumpower presented numerous pages of evidence in his memorandum and reply brief that trial counsel could have entered into evidence on defense, but didn't. The lack of defense blocked the jury from hearing of the hacking/misuse of Berger's account by Box of Rocks, the same individual that posted WM-12, confessed to it in Joint Exhibit WM-1 and messaged with Constable Power 5 days AFTER Mumpower and Berger were in jail. See Memorandum, Defendant's Exhibit DX-6. Monorail Cat is Box of Rocks aka Cartman. Origami is Constable power. See also discussion at pgs. 22-28 of Mumpower's memorandum and Doc. 724, Pg. 1144, L 17 to 1145 L 2. Trial counsel's actions also failed to preserve evidence and arguments for appeal. Cronic v. United States, 466 US 648, 657 (1984).

Second, trial counsel abandoned his client during the viewing of digital evidence at evening recess on day 3. This viewing and discussion that should have taken place was vital to a competent defense. see Reply Brief, pgs 25-27. Cronic, Id.

Third, Lang made a serious mistake with terminology by

-21-

referring to a virus instead of a Trojan while cross examining
the government's forensics expert, seriously damaging defenses
credibility. Doc 723, Pgs. 916-918; Memorandum, pgs. 34-35,
and Reply, pgs. 30-34.

Fourth, trial counsel made serious errors during
cross-examination of WM-12 and his presentation of Joint
Exhibit WM-1. See Doc 723, pgs. 876, L 7 to 877, L 16; pgs
883, L 19 to 885, L 1; Doc 760, pg. 78, L 4-24; Memorandum
pgs. 27-28.

Fifth, trial counsel got an extremely important date
wrong (January 21, 2007) for the last key the Government said
Mumpower possessed. Again damaging defense credibility,
Memorandum pg. 34 and 37; Doc 723 pg. p929, L 16-20; pg. 930,
L 8-13; Reply, pg. 14.

Sixth, Lang made no mention in his closing argument
about the jury not seeing the images for WM-11A or the fact
they are legal, or take any steps to preserve that
information for appeal such as a motion to dismiss for failure
to prove all the elements of WM-11A.

In summary, there is an ongoing pattern with Langs
ineffectiveness. In each of the three advertisement-
transportations during cross examination and at other times
Lang took measures that destroyed defense credibility: WM-12 -
the comparison of WM-12 and Joint Exhibit WM-1; WM-11A -
failure to preserve the legality of the images or that they
were not seen by the jury; and WM-5 as well as the receipt WM-
16B, the incorrect date for the keys. Each error damaged
defense credibility and each resulted in conviction. Lang was
not just incompetent, his actions appear as a deliberate

-22-

pattern of ineffectiveness, delivering the trial into the hands of the government and assuring that Mumpower would have an unfair disadvantage on appeal because of an incomplete record.  See also other errors mentioned throughout this brief and ineffective assistance arguments throughout Defendant's Memorandum and pgs. 64-65 as well as Reply Brief pgs. 44-47 and throughout.

2. There is little said about appellate attorney Gary L. Printy that's not already been said.  I therefore reference this Court to Defendant's Reply Brief, pgs 48-50; Memorandum Pgs. 10-11 and pgs. 65-67; and Objections To Magistrate's R&R, pgs 25-27 as well as numerous other instances throughout the named documents as well as this instead document.

Appellate attorney Printy isn't just constitutionally incompetent, he's a criminal, plagiarizing this defendant's entire brief from co-counsel then signing his name to it and getting paid for work he did not do.  That's fraud under the False Claims Act. (Note: Printy is a C.J.A. contract attorney).  "As construed in law of plagiarism, copying is not confined to literary repetition, but includes various ways in which matter in any publication may be adopted, imitated, or transferred, with more or less colorable alterations to disguise piracy; no matter how different portions of work may be from plagiarized product, it is enough if substantial parts were lifted." Cantor v. Mankiewicz, (1960, sup) 203 NYS2d 626, 125 USPQ 598. In re Steven A. Mundie, Attorney, 453 Fed. Appx. 9, 16-21 (2nd. Cir. 2011). See also Taco Cabana Int'l v. Two Pesos, Inc, 932 F2d 1113, 1124 and Ns. 16-17 (5th Cir. 1991).

Printy obtained an extension of time under false pretenses then, it is believed, waited until other co-counsel's briefs were posted to Pacer, and plagiarized them. He also showed a pattern of trying to weasel out of doing his own work at defendant's sentencing, (Memorandum, pg 65)(Doc. ECF 812, pg. 1, L 8 to Pg. 5, L 9)(Reply Brief Exhibit RX-7). See also various arguments on ineffectiveness of appellate counsel throughout the memorandum, reply brief and objections to Magistrate's R&R, as well as this instant document. One can only call Printy's conduct unethical, dishonest, constitutionally incompetent and criminal. As stated in a previous document, in my home State we call an attorney like Printy - A Charlatan!

### 3.) APPELLATE COURT ERRORS

A. The Appellate Court is in error when it constructively amended the indictment by folding the supposed substantive conspiracies into the CEE to sustain a conviction on Count 1 for lack of a third predicate act. "Ever since Ex Parte Bain, 121 US 1; 7 S.Ct. 781, was decided in 1887, it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the Grand Jury itself." Stirone v. United States, 361 US 212, 215-16 (1960). The first mention of anything resembling substantive conspiracies is on the Jury Form. Not even the jury instructions mention substantive conspiracies nor does the Indictment. As written it is a single § 371 conspiracy with multiple objects. That is what this defendant expected

-24-

to be tried for.  That is what the Grand Jury indicted for and
that is what the Trial Jury was presented during the trial.
"To uphold a conviction on a charge that was neither alleged
in an indictment nor presented to a jury at trial offends the
most basic notions of due process.  Few constitutional
principals are more firmly established than a defendant's
right to be heard on the SPECIFIC CHARGES of which he is
accused... [a]ppellate courts are not free to revise the basis
on which a defendant is convicted simply because the same
result would likely obtain on retrial." Dunn v. US, 442 US
100, 106 (1979); McCormick V. United States, 500 US 257, 270
N. 8 (1991). See also Stirone, Id.  "It is as much a violation
of due process to send an accused to prison following
conviction of a charge on which he was never tried as it would
be to convict him upon a charge that was never made." Dunn,
Id. at 107, quoting Cole v. Arkansas, 333 US 196, 201 (1948).


        B. Though legally correct in its thinking, the
Appellate Court was in error when it changed the government's
theory that only 3 predicate acts were needed among all the
defendants to 3 predicate acts each and sustained the
convictions. Doc. 760, pg. 99, L 19-25.  the jury
instructions, elements 1, 3 and 5, clearly refer to "the
defendant."  But 2 and 4 do not and thus left the jury to
choose 3 predicates among all defendants. Doc. 469, pg. 17.
Since this jury instruction was written by the prosecutor
there can be no doubt what it was intended to mean. Doc 724,
pg. 1161, L 10-16 and pg. 1165, L 22-25.
        It is also obvious that the jury convicted on 3

predicate acts among all defendants. Defendant White was
convicted because of the false government theory and his
conviction was reversed. He did not have three qualifying
predicate acts himself. "[W]e cannot affirm a criminal
conviction on the basis of a theory not presented to the
jury..." Chiarella v. United States, 445 US 222, 236 (1980).
See Dunn Id. at 106. "This Court has never held that the right
to a jury trial is satisfied when an appellate court retries a
case on appeal under different instructions and on different
theory than was ever presented to the jury." McCormick, Id. at
N. 8.

        Appellate counsel was constitutionally ineffective for
failure to ask for a rehearing or rehearing en banc on the two
errors. Had he done so, the court would have been obligated
to reverse Mumpower's conviction on Count 1. Mumpower's due
process rights were violated and he has been harmed by a loss
of liberty with a life sentence.


                4.) Failure Of The District Court To Address
                        All Constitutional Claims

        Mumpower's Objections To The Magistrate's R&R is as
good a discussion for this claim as can be done by this
defendant, supplemented by discussions in this instant brief
as well as Defendant's Memorandum In Support of his § 2255,
and Reply Brief.

        It is clear throughout the trial, and appeal what the
government's stand is on the faulty indictment. The
government doesn't want to concede the fault even though it is
clear that the indictment does not meet the Russell (supra)

standards.  See also <u>United States v. Bobo</u>, 344 F3d 1076, 1083
(11th Cir. 2003).  It's so simple.  The government only needs
to follow its own example in the indictment for Count 2 (the
overt acts).  No. 14, which is WM-11A, is correctly worded,
and Counts 12, 22, and 35 should have followed that example.
Everything would have been OK, but instead, the government
chose to dump the 3 advertisements, 3 transportations, and 2
receipts into a single advertisement, transportation and
receipt so they could be left "free to roam at large to shift
its theory of criminality so as to take advantage of each
passing vicissitude of trial and appeal." <u>Russell</u>, <u>supra</u> at
768.  The Court below abused its discretion and chose to
follow the governments faulty indictment to save a conviction
rather than follow the law.  Mumpower still does not know
which advertisement, transportation or receipt the jury
convicted him of, violating Mumpower's due process rights.

The Court below abused its discretion and refused to
accept the fact that the images for WM-11A were never
published (shown) to the jury, thus the government failed to
prove all the elements of that charge, violating Mumpower's
due process rights and confrontation rights.  If the Court
truly believed the images were shown to the jury, they would
have pointed to trial document, page, and line as to where the
images were published.  They did not. (Doc 1208, pg. 40).

The Court below abused its discretion and refused to
accept the Eleventh Circuit's precedent that requires a
Pinkerton instruction to the jury for co-conspirator
liability. <u>United States v. Raffone</u>, 693 F2d 1343, 1346 (11th
Cir. 1982).

-27-

the Court below quotes, "[t]o set aside a conviction
solely because the outcome would have been different but for
counsel's error may grant the defendant a windfall to which
the law does not entitle him." Lockhart v. Fretwell, 506 US
364, 369-70 (1983), (Doc 1208, pgs. 43-44). But the Court
applied it incorrectly. It's the appellate counsel defendant
claims is lawless, not the trial counsel. The Court fails to
discuss or even mention his lawlessness. I agree with
Lockhart, but I also believe it is equally wrong when the
government is the deliberate benefactor of defendant's lawless
appellate counsel.

These are just a few of the more serious issues that
are outlined in the Objections To The Magistrate's R&R. I ask
the Eleventh Circuit to vacate and dismiss the Magistrate's
R&R in its entirety and grant Mumpower his § 2255 in full.
Or, in the alternative, vacate the R&R, order the Court below
to hold an evidentiary hearing and issue a new R&R explaining
each constitutional claim fully without needless boilerplate
that is irrelevant or out of context.


### Conclusion

This defendant placed his trust in his trial and
appellate counsel only to be abandoned and betrayed by both
which has violated Mumpower's constitutional due process, fair
trial, free speech rights, and right to effective assistance
of counsel under the U.S. Constitution. They are both
deliberately incompetent and constitutionally ineffective as
discussed throughout.

Mumpower requests an evidentiary hearing and wishes to

develop the following:

1. Settle the dispute between the government and defense as to WM-11A's images being published.

2. Discuss the legality of WM-11's images and gain access to those images to discuss them with Mumpower's assigned attorney (if any).

3. Mumpower needs to do further research (discovery) on the hacking/use of others accounts, and subpoena the original posts downloaded by Power and Cordero referenced in Defendant's Exhibit DX-7. Mumpower needs digital copies of the actual keys used in those downloads as mentioned in DX-7 and needs a working copy of PGP. Mumpower needs copies of the original encrypted messages, and needs access to Berger's evidence disks. Mumpower needs an exact image (forensic copy) of Berger's harddrive. This defendant will be looking at his forensics - how his machine was set up, what software was installed, Trojans/viruses found, forensics report, Cart report, NCMEC report, and keys found, etc., all discovery trial counsel should have done.

4. Mumpower needs the laptop purchased for our discovery pre-trial with all the original evidence disks installed (including Bergers) as we installed pre-trial.

5. Mumpower needs copies of all documents entered in evidence at trial.

This may not be all that's required, as evidence discovered may lead to more evidence needed to support this defendant's claims.

Respectfully submitted,

-29-

CERTIFICATE OF COMPLIANCE

This brief is 30 pages or less in length and complies with the requirements of Federal Rules Of Appellate Procedure 32(a)(7).

Warren Mumpower, pro se

05984-018

CERTIFICATE OF SERVICE

I Certify that a true and correct copy of the foregoing was served via first class mail, proper postage paid, on David L. Goldberg, AUSA, 21 E. Garden St., Pensacola, Fl. 32502 this ___5TH___ day of April, 2017.

Warren Mumpower, pro se

05984-018  USP-Tucson

P.O. Box 24550

Tucson, AZ 85734

PRISON MAIL BOX RULE

Under penalty of perjury, I, Warren Mumpower, declare this document
was mailed at the U.S. Penitentiary-Tucson mailroom, first class
postage paid in accordance with the Mailbox Rule on the   _5TH_
day of April, 2017.


Warren K. Mumpower, pro se

05984-018  USP-Tucson

P.O. Box 24550

Tucson, AZ 85734